*610 OPINION OF THE COURT
Robert J. Lunn, J.
This is an action to recover damages for personal injuries sustained by plaintiff when he fell from a ladder. At issue is the applicability of certain provisions of the Labor Law to this accident where plaintiff is an employee of a public electric utility.
Defendant Chase Woods Manor, L.P. is the owner of an apartment complex in Gates, New York. Defendant Welker Property Management, Inc. (hereinafter Welker) managed the property for Chase Woods Manor. In order to bring the various apartment buildings in compliance with current building codes, Welker hired defendant Douglas Bibby, doing business as Bibby Electric (hereinafter Bibby), to remove the old electric meter boxes from the basements of the buildings and install new meter boxes and electrical risers on the outside of the apartment buildings. Prior to commencing his work, Bibby, in compliance with Rochester Gas & Electric (hereinafter RG&E) procedure, contacted RG&E to advise them of his work and to obtain its approval for the location of the risers and the meter boxes. On April 11, 2000, Bibby met with plaintiff, a 30-year employee of RG&E, at the job site and obtained his approval on behalf of RG&E for the location of the new risers and meter boxes. After Bibby had installed the new risers and meter boxes and had them independently inspected, he again contacted RG&E’s electric distribution office to request an electrical disconnect. RG&E then scheduled plaintiff to again come to Chase Woods Manor to disconnect the old risers from RG&E’s power lines and in turn reconnect the new risers to the power lines.
On April 28, 2000, the day of the accident, plaintiff was in the process of disconnecting the electric service to one of the apartment buildings. In order to reach the attachment point for the power line, he placed the bottom of a 24-foot extension ladder on the concrete sidewalk and leaned the top of the ladder against the side of the building. The bottom of the ladder was equipped with rounded metal spurs. As plaintiff exerted force to cut through two sets of cables at the old connectors, the foot of the ladder started to slip away from the building. Apparently, neither the ladder nor plaintiff was tied off to the building because there was no equipment provided to accomplish either task. Instead, plaintiff was tied to the ladder itself when it began to slip. He rode the ladder down until he landed on the sidewalk below causing injury to himself.
*611 It is uncontroverted that neither Mr. Bibby nor any other defendant supplied plaintiff with the ladder or any other equipment. In fact, according to plaintiff, it was against RG&E policy to use any other equipment other than its own. It is also not disputed that none of the defendants hired or paid RG&E to perform its work. As the sole public electric utility company, defendants had no choice but to have RG&E perform the work of disconnecting and reconnecting the risers to RG&E’s power transmission lines.
Plaintiff commenced this action alleging violations of Labor Law § 240 (1), § 241 (6) and § 200 against all defendants. Defendants now move for summary judgment dismissing the complaint. Plaintiff cross-moves for partial summary judgment regarding liability under Labor Law § 240 (1) against all defendants. The court will separately address each claim under the various sections of the Labor Law.
Section 200 of the Labor Law is a codification of the common-law duty imposed upon an owner or general contractor to provide construction site workers with a safe place to work. (Comes v New York State Elec. & Gas Corp., 82 NY2d 876 [1993].) Where such a claim arises out of alleged defects or dangers arising from a subcontractor’s methods or materials, recovery against the owner or general contractor cannot be had unless it is shown that the party to be charged exercised some supervisory control over the operation. (Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 505 [1993].) Here, there is no proof that any defendants exercised any supervision or control over plaintiff’s work.
Plaintiff argues that his injury was not caused by the manner in which his work was performed but by a dangerous condition that existed on the premises and therefore supervision and control is not necessary. Plaintiff claims that the dangerous condition was locating the attachment point of the riser to the power line above a concrete sidewalk and over a smaller porch roof. However, plaintiff actually approved this location. In essence, he, not defendants, created the dangerous condition. The court therefore finds this argument unpersuasive. Accordingly, the Labor Law § 200 cause of action is dismissed against all defendants.
Labor Law § 240 (1) provides that “All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, *612 or cause to be furnished or erected for the performance of such labor” certain enumerated safety devices. As has been repeatedly stated by the Court of Appeals, “The purpose of this statute is to protect workers and to impose the responsibility for safety practices on those best situated to bear that responsibility.” (Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 500 [1993]; see also Zimmer v Chemung County Performing Arts, 65 NY2d 513, 520 [1985]; Gordon v Eastern Ry. Supply, 82 NY2d 555, 559 [1993].) Labor Law § 240 (1) therefore imposes absolute liability on owners, contractors and their agents which is nondelegable regardless of whether they actually exercised supervision or control over the work (see, e.g., Haimes v New York Tel. Co., 46 NY2d 132, 136-137 [1978]). Labor Law § 241 (6) also imposes “a nondelegable duty of reasonable care upon owners and contractors ‘to provide reasonable and adequate protection and safety’ to persons employed in, or lawfully frequenting, all areas in which construction, excavation or demolition work is being performed” (Rizzuto v Wenger Contr. Co., 91 NY2d 343, 348 [1998]). This duty likewise is absolute and imposes liability on an owner or general contractor even in the absence of supervision or control of the worker (Allen v Cloutier Constr. Corp., 44 NY2d 290, 299-300 [1978]; Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 502 [1993]).
Defendants argue that they are not subject to liability under either of these sections of the Labor Law because they cannot be considered an owner or general contractor under the particular facts of this case. Defendants contend that since they did not hire or pay plaintiff or his employer, RG&E, they are not an owner or general contractor subject to Labor Law liability. Stated another way, defendants argue that plaintiff is not a member of the class of workers for which the protections of the Labor Law are afforded. In making this argument, defendants rely on the language in the Court of Appeals decision in Whelen v Warwick Val. Civic & Social Club (47 NY2d 970 [1979]), wherein the Court stated, “To come within the special class for whose benefit absolute liability is imposed upon contractors, owners and their agents to furnish safe equipment for employees under section 240 of the Labor Law, a plaintiff must demonstrate that he was both permitted or suffered to work on a building or structure and that he was hired by someone, be it owner, contractor or their agent.” (Id. at 971.) The First Department has expanded upon this holding to declare that “It is well settled that, to recover under Labor Law §§ 200, 240 *613 and 241 as a member of the special class for whose protection these provisions were adopted, a plaintiff must establish two criteria: (1) that he was permitted or suffered to perform work on a structure and, (2) that he was hired by the owner, the general contractor or an agent of the owner or general contractor” (Brown v Christopher St. Owners Corp., 211 AD2d 441, 442 [1st Dept 1995]; see also Agli v Turner Constr. Co., 246 AD2d 16 [1st Dept 1998]; Ceballos v Kaufman, 249 AD2d 40 [1st Dept 1998]; Aviles v Crystal Mgt., 233 AD2d 129 [1st Dept 1996]).
It is difficult however to reconcile these decisions with the Court of Appeals holdings which unequivocally state that “liability rests upon the fact of ownership and whether [the owner] had contracted for the work or benefitted from it are legally irrelevant.” (Gordon v Eastern Ry. Supply, 82 NY2d 555, 560 [1993]; Coleman v City of New York, 91 NY2d 821, 822 [1997].) The Second Department has also not followed the rationale in Brown v Christopher St. Owners Corp. in a case which is factually indistinguishable. (See Otero v Cablevision of N.Y., 297 AD2d 632 [2d Dept 2002].) In Otero, relying upon the “bright line” rule of Gordon v Eastern Ry. Supply (82 NY2d 555 [1993], supra) and Coleman v City of New York (91 NY2d 821 [1997], supra), the building owner was found liable under Labor Law § 240 (1) for injuries suffered by a cable television installer even though the owner did not request or authorize the work and did not even have any prior notice of plaintiff’s presence on its property. It would seem therefore that defendants cannot escape liability under the Labor Law merely because they did not hire plaintiff’s employer to perform the work which resulted in plaintiff’s injury.
This court is still troubled with applying the “bright line” rule of absolute liability for an owner where plaintiff is employed by a public utility which has a monopoly over the distribution of electricity. Neither the court nor any party has found any reported Labor Law decision involving a plaintiff who worked for a public gas or electric utility. This distinguishes this case from the Gordon v Eastern Ry. line of cases which imposed the “bright line” rule. In Gordon and its progeny, the defendant owners had the ability to provide some type of contractual indemnification from a tenant or other party in order to protect themselves from absolute vicarious liability. Here, neither Chase Woods Manor nor Bibby had any ability to lessen its liability exposure via some type of agreement affecting RG&E’s work. They were required to have RG&E person *614 nel disconnect and reconnect the electric power to RG&E’s power lines and meters. They had no ability to direct the manner or method by which RG&E personnel performed their work. RG&E required that its workers use only RG&E supplied tools and equipment. In this situation, “underlying notions of reasonableness and fairness” dictate that strict application of Labor Law § 240 (1) and § 241 (6) would be unjust and inequitable Csee Khela v Neiger, 85 NY2d 333, 337 [1995]).
Additionally, imposition of strict liability where plaintiff is employed by a public utility would not further the legislative intent of Labor Law § 240 or § 241. The Legislature’s intent in enacting these statutes was “ ‘to protect! ] workers by placing “ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor” (1969 NY Legis Ann, at 407), instead of on workers, who “are scarcely in a position to protect themselves from accident” ’ ” (Mordkofsky v V.C.V. Dev. Corp., 76 NY2d 573, 577 [1990], quoting Zimmer v Chemung County Performing Arts, 65 NY2d at 520). Here, neither the owner Chase Manor, its agent, Welker Property Management, nor its contractor, Bibby Electric, had any ability whatsoever to dictate safety practices for an RG&E employee. Rather, it is RG&E who is in the best position to protect its workers from accident.
The court also agrees with defendants that the causes of action under Labor Law §§ 240 and 241 should be dismissed because they were not the owners of the structure being altered by plaintiff at the time of his accident. Plaintiff, at his deposition, stated that at the time of the accident he was cutting two sets of cables (plaintiffs deposition transcript, at 56, line 4). He had previously stated that in order to disconnect the electric service he had to cut a number of wires off the connectors (plaintiffs deposition transcript, at 39, lines 3-4). The cable and the connectors were supplied by RG&E (plaintiffs deposition transcript, at 41, lines 3-4). Contrary to the argument of plaintiffs counsel, according to the plaintiff himself, he was working on the RG&E cables going into the old RG&E connectors at the time of the accident and not on the “attachment point” and riser cables supplied by defendant Chase Woods Manor. Defendants are therefore not liable under either Labor Law § 240 (1) or § 241 (6) because they are not “owners” of the electric service cables being altered by plaintiff at the time of the accident and did not otherwise act in the capacity of an owner (Bonghi v New York Tel. Co., 277 AD2d 893 [4th Dept *615 2000]; Fuller v Niagara Mohawk Power Corp., 213 AD2d 986 [4th Dept 1995]; Brennan v 3785 S. Park, 242 AD2d 929 [4th Dept 1997]; Mangiameli v Galante, 171 AD2d 162, 163, 164 [3d Dept 19913).
Finally, with respect to defendant Bibby, he also is not liable under either Labor Law § 240 (1) or § 241 (6) because he was at best a prime contractor and had no authority to control plaintiff’s work. Only owners and general contractors are absolutely liable for violations of Labor Law §§ 240 and 241 (see, Zimmer v Chemung County Performing Arts, 65 NY2d 513, 520 [1985]). All other parties, such as prime contractors, are liable “only if they are acting as the ‘agents’ of the owner or general contractor by virtue of the fact that they had been given the authority to supervise and control the work being performed at the time of the injury” (Walsh v Sweet Assoc., 172 AD2d 111, 113 [3d Dept 1991] [emphasis in original], lv denied 79 NY2d 755 [1992]). The court agrees with counsel for defendant Bibby that the focus of the authority which could result in Bibby being deemed the statutory agent of the owner is not whether he had authority over the entire scope of the electrical renovation job in this case, but, in the words of the Third Department, whether Bibby had “the authority to insist that proper safety practices are followed and the right to control work in light of such authority” (id. at 114; Decotes v Merritt Meridian Corp., 245 AD2d 864, 866 [3d Dept 1997]; Mills v Niagara Mohawk Power Corp., 262 AD2d 901, 902 [3d Dept 1999]). Plaintiff has failed to raise a triable issue of fact that defendant Bibby, a prime contractor, had any authority to insist that plaintiff follow proper safety practices or otherwise direct or control the method and manner of plaintiff’s work. As cautioned by the Court of Appeals, “To hold otherwise and impose a nondelegable duty upon each contractor for all injuries occurring on a job site and thereby make each contractor an insurer for all workers regardless of the ability to direct, supervise and control those workers would lead to improbable and unjust results and would directly contravene the express legislative history accompanying the 1969 amendments to these provisions.” (Russin v Picciano & Son, 54 NY2d 311, 318 [1981].)
For all of the foregoing reasons, defendants’ motions for summary judgment are granted. The complaint is dismissed. Plaintiff’s cross motion for partial summary judgment is denied.